IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-01153-CMA-MEH

MARY MARQUEZ, individually and as the personal representative of the Estate of Robert L. Balerio,

      Plaintiff,

v.

BNSF RAILWAY COMPANY,

      Defendant.

---

# ORDER

---

**Michael E. Hegarty, United States Magistrate Judge**.

Defendant BNSF Railway Company seeks an order requiring Plaintiff Mary Marquez to "furnish fundamental evidence to substantiate essential elements of [her] claim, such as causation of the plaintiff-decedent's injuries . . . ." Mot. for *Lone Pine* Order 2, ECF No. 9. The Court holds that this case does not warrant the extraordinary procedure of requiring Ms. Marquez to produce substantive causation evidence pre-discovery. Accordingly, the Court denies BNSF's Motion for *Lone Pine* Order.

## BACKGROUND

Ms. Marquez initiated this action on May 9, 2017, individually and on behalf of her deceased husband, Robert L. Balerio. Compl., ECF No. 1. Ms. Marquez claims that Mr. Balerio's exposure to at least nine toxic chemicals during his employment with BNSF's predecessor, Colorado and Southern Railway, caused him to develop esophageal cancer. *Id.* at ¶¶ 4–7. According to Ms. Marquez, Mr. Balerio was exposed to these chemicals because of the railway's negligence. *Id.* at

¶¶ 8–9.

BNSF responded to the Complaint by filing a Motion for a More Definite Statement, which the Court denied on July 27, 2017. Order Denying Motion for a More Definite Statement, ECF No 28. The Court held that Ms. Marquez's Complaint, which asserts who was involved in the alleged toxic exposure, what caused the exposure, the time frame for the exposure, and how the exposure occurred, contained sufficient information for BNSF to respond. *Id.* at 5.

Shortly after filing its Motion for a More Definite Statement, BNSF filed the present Motion for a *Lone Pine* Order, ECF No. 9. BNSF contends the Court should require Ms. Marquez to produce affidavits from physicians specifying the particular toxic substances that caused Mr. Balerio's cancer and the scientific basis for the physicians' opinions. *Id.* at 2. Additionally, BNSF would like the affidavits to state Mr. Balerio's "related diseases" and the manner in which Mr. Balerio was exposed to each substance. *Id.* According to BNSF, this is proper, because without such an order, Ms. Marquez's boilerplate Complaint would subject BNSF to overly burdensome and prejudicial discovery. *Id.* at 5.

Ms. Marquez opposes the issuance of a *Lone Pine* Order. Resp. to Mot. for *Lone Pine* Order, ECF No. 22. According to Ms. Marquez, such orders are inappropriate where, as here, the issues are relatively straight forward and the parties have not engaged in discovery. *Id.* at 2–7. Thus, Ms. Marquez asserts that the entry of such an extraordinary order in this case would "serve[] as an improper and untimely substitute for summary judgment motions." *Id.* at 10. BNSF filed a reply brief on July 27, 2017. Reply in Support of Mot. for Lone Pine Order, ECF No. 29.

## LEGAL STANDARD

*Lone Pine* orders "are pre-discovery orders designed to handle the complex issues and

potential burdens on defendants and the court in mass tort litigation by requiring plaintiffs to produce some evidence to support a credible claim.[1] *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 604 n.2 (5th Cir. 2006); *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000) (approving the entry of a *Lone Pine* order "to manage the complex and potentially very burdensome discovery that the case[] would require"). Neither the Tenth Circuit nor any district court within this Circuit have addressed the propriety of issuing *Lone Pine* orders. Judges in other circuits have recognized that courts have authority to issue *Lone Pine* orders pursuant to Federal Rule of Civil Procedure 16(c)(2)(L), which permits a court to "adopt[] special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems." *Arias v. DynCorp*, 752 F.3d 1011, 1014 (D.C. Cir. 2014) ("In the federal courts, such orders are issued under the wide discretion afforded district judges over the management of discovery under Fed. R. Civ. P. 16." (quoting *Acuna*, 200 F.3d at 340)); *McManaway v. KBR, Inc.*, 265 F.R.D. 384, 385 (S.D. Ind. 2009) ("*Lone Pine* orders are permitted by Rule 16(c)(2)(L) of the Federal Rules of Civil Procedure . . . .").

However, courts have also noted the extraordinary nature of *Lone Pine* orders and have generally refused to issue them except in litigation with complex and unique discovery issues. *See Russell v. Chesapeake Appalachia, L.L.C.*, 305 F.R.D. 78, 85 (M.D. Pa. 2015) ("There is no need for the extraordinary imposition of a *Lone Pine* order at this juncture."); *Nolan v. Exxon Mobil Corp.*, No. 13-439-JJB-EWD, 2016 WL 1213231, at *11 (M.D. La. Mar. 23, 2016) ("This court agrees with Plaintiffs that entry of a *Lone Pine* order is an 'extraordinary procedure' that should be

---

[1] *Lone Pine* orders derive their name from a New Jersey case: *Lore v. Lone Pine Corp.*, No. L-33606-85, 1986 WL 637507 (N.J. Super. Ct. Nov. 18, 1986).

used 'where existing procedural devices explicitly at the disposal of the parties by statute and federal rule have been exhausted or where they cannot accommodate the unique issues of this litigation.'" (quoting *In re Digitek Prod. Liab. Litig.*, 264 F.R.D. 249, 259 (S.D. W. Va. 2010))). When determining whether to issue a *Lone Pine* order, courts typically consider the following five factors:

> (1) the posture of the action, (2) the peculiar case management needs presented, (3) external agency decisions impacting the merits of the case, (4) the availability and use of other procedures explicitly sanctioned by federal rule or statute, and (5) the type of injury alleged by plaintiffs and its cause.

*In re Digitek Prod. Liab. Litig.*, 264 F.R.D. at 256; *Manning v. Arch Wood Prot.*, 40 F. Supp. 3d 861, 863 (E.D. Ky. 2014) (denying a motion for *Lone Pine* order based on the preceding five factors).

## ANALYSIS

Because none of the factors articulated above favor the entry of a *Lone Pine* order, the Court declines to issue one in this case. Regarding the posture of the action, "courts have been reluctant to grant *Lone Pine* motions before any meaningful discovery has been conducted." *Manning*, 40 F. Supp. 3d at 864; *Adkisson v. Jacobs Eng'g Grp., Inc.*, No. 3:13-CV-505-TAV-HBG, 2016 WL 4079531, at *4 (E.D. Tenn. July 29, 2016) ("[G]enerally, Lone Pine orders are disfavored in the early stages of the proceedings where no meaningful discovery has taken place."). Indeed, one federal court went as far as to state that "[a] *Lone Pine* order should issue only in an exceptional case and after the defendant has made a clear showing of significant evidence calling into question the plaintiffs' ability to bring forward necessary medical causation and other scientific information." *McManaway*, 265 F.R.D. at 388. Here, the parties have not engaged in discovery, and they agreed to stay all future discovery pending a ruling on the present motion. ECF Nos. 24, 27. Therefore, the first factor does not favor a *Lone Pine* order.

Although BNSF cites cases where courts have issued pre-discovery *Lone Pine* orders, as BNSF recognizes, each of these cases were likely to involve complex discovery with multiple parties. *See* Reply in Support of Mot. for *Lone Pine* Order 4, ECF No. 29 ("Discovery orders are meant to streamline the often-times complex discovery in such cases."). For example, in *Acuna*, a case involving over one thousand plaintiffs, the court approved the use of a *Lone Pine* order to "handle the complex issues and potential burdens on defendants . . . ." 200 F.3d at 340–41. Similarly, in *Ashford v. Hercules, Inc.*, a case where forty-nine plaintiffs alleged the defendant contaminated their properties, the court issued a *Lone Pine* order, because "the issues presented in this case are expansive, complex, and will require considerable expense and effort to litigate." 2:15cv27-KS-MTP, 2015 WL 6118387, at *3–4 (S.D. Miss. Oct. 16, 2015). In contrast, this case, which contains only one plaintiff and one defendant, primarily involves one issue—whether Mr. Balerio's exposure to various substances during his employment with the railway caused his esophageal cancer. Thus, the cases cited by BNSF are not persuasive.

BNSF also contends that entry of a *Lone Pine* order at this stage is proper, because it would require only that Ms. Marquez's counsel produce information that Rule 11 demanded she have prior to filing this case. Mot. for *Lone Pine* Order 9. The Court disagrees. BNSF seeks an order requiring Ms. Marquez to provide, *inter alia*, an expert affidavit opining that each of the toxic substances listed in the Complaint caused Mr. Balerio's cancer. *Id.* at 2. As aptly stated by the court in *Manning*, "Rule 11 does not require conclusive proof of causation prior to filing suit." 40 F. Supp. 3d at 865.

Regarding the second factor, the Court finds that the case management needs in this litigation do not favor entry of a *Lone Pine* order. Courts have generally issued such orders because of the

complex discovery and case management needs that exist in cases with multiple plaintiffs and defendants. *Abner v. Hercules, Inc.*, No. 2:14cv63-KS-MTP, 2014 WL 5817542, at *3 (S.D. Miss. Nov. 10, 2014) (finding that the case management needs favored entry of a *Lone Pine* order, because the proceeding involved "more than 400 Plaintiffs who claim that constituents from [the defendant's work site] contaminated more than 500 parcels of real estate."); *Avila v. Willits Envtl. Remediation Tr.*, 633 F.3d 828, 834 (9th Cir. 2011) (holding that the district court did not abuse its discretion in issuing a *Lone Pine* order, because the case had been pending for five years and involved numerous plaintiffs). In *Acuna*, the court held that a *Lone Pine* order was proper in a case with "approximately one thousand six-hundred plaintiffs suing over one hundred defendants for a range of injuries occurring over a span of up to forty years." 200 F.3d at 340. Conversely, in *Ramirez v. E.I. Dupont De Nemours & Co.*, a case involving "a single plaintiff and single defendant," the court held that a *Lone Pine* order was "patently unwarranted." No. 8:09-cv-321-T-33TBM, 2010 WL 144866, at *3 (M.D. Fla. Jan. 8, 2010). Similarly, the present case involves one plaintiff suing one defendant for negligently causing the decedent's esophageal cancer. As such, the Court does not perceive peculiar case management or discovery needs.

BNSF's arguments to the contrary are unavailing. BNSF first contends this case presents abnormal case management needs, because Ms. Marquez's counsel "does not know what substances his plaintiff-decedent was exposed to, when, where, how, and for how long." Reply in Support of Mot. for *Lone Pine* Order 6. As the Court held in its Order on BNSF's Motion for a More Definite Statement, the Complaint provides sufficient detail on Mr. Balerio's exposure to the listed substances. ECF No. 28, at 5. Second, BNSF asserts this case is in essence a mass tort action involving multiple plaintiffs, because Ms. Marquez's counsel has filed many other similar cases

against BNSF. Mot. for *Lone Pine* Order 11. However, the fact that many other plaintiffs are suing BNSF for similar conduct does not enlarge the case management needs of this litigation. Indeed, because Ms. Marquez's counsel filed the cases separately, BNSF will not be forced to engage in the burdensome task of sorting through the plaintiffs to discern the injury that each plaintiff suffered and the time frame during which each plaintiff suffered it. The individual complaints contain this information. *See* Compl. ¶¶ 4–6. Accordingly, this litigation does not involve inherently complex or difficult case management needs.

The third factor also does not weigh in favor of issuing a *Lone Pine* order. "In some toxic tort cases, independent agencies have released information that can act as proof of general causation, or conversely, as evidence against it." *Manning*, 40 F. Supp. 3d at 867. Here, neither party references agency decisions impacting the merits of this case.

The fourth factor—the availability and use of other procedures—weighs against granting BNSF's motion. "Resorting to crafting and applying a *Lone Pine* order should only occur where existing procedural devices explicitly at the disposal of the parties by statute and federal rule have been exhausted or where they cannot accommodate the unique issues of this litigation." *In re Digitek Prod. Liab. Litig.*, 264 F.R.D. at 259. Here, the discovery provided for in the Federal Rules of Civil Procedure along with BNSF's ability to seek summary judgment are sufficient to alleviate any concerns that BNSF will be subjected to overly burdensome discovery or that Ms. Marquez will be permitted to prosecute a frivolous case. If at any point BNSF believes that specific discovery is overly burdensome, it may seek to limit the request as not proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). Furthermore, if Ms. Marquez cannot obtain evidence supporting her allegation that Mr. Balerio's exposure to specific substances during his employment caused his

cancer, BNSF may move for summary judgment at that time. To require Ms. Marquez to produce the requested evidence at this stage of the proceeding would run afoul of these established procedural mechanisms. *See Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1168 (11th Cir. 2014) (stating that *Lone Pine* orders "should not be used as (or become) the platforms for pseudo-summary judgment motions at a time when the case is not at issue and the parties have not engaged in reciprocal discovery").

Finally, the Court finds that the fifth factor—the type of injury and its cause—also favors denying BNSF's motion. It is likely that both sides will seek to present expert testimony opining that the listed substances did or did not cause Mr. Balerio's esophageal cancer. As the court stated in *Manning*, "*Daubert* hearings and motion *in limine* practice are available to challenge such evidence." 40 F. Supp. 3d at 868 (holding that the fifth factor weighed against a *Lone Pine* order, because "it is likely that causation will be highly contentious and involve much expert testimony"); *In re Digitek Prod. Liab. Litig.*, 264 F.R.D. at 259 (holding that entry of a *Lone Pine* order was improper because of the likely need for expert testimony to establish causation).

## CONCLUSION

In sum, this case does not present the type of extraordinary circumstances that warrant imposition of a *Lone Pine* order. As such, the Court will not exercise its discretion to require Ms. Marquez to produce pre-discovery proof of her claims, and BNSF's Motion for a *Lone Pine* Order [filed July 12, 2017; ECF No. 9] is **denied**.

Entered and dated at Denver, Colorado, this 8th day of August, 2017.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge